Case No. 15-1338, United States Postal Service Petitioner v. Postal Regulatory Commission. Mr. Belt for the petitioner, Mr. Whitaker for the respondent. Good morning. Good morning, Your Honors. You may please record. The Postal Service has two types of evidence you have in your possession. The first type is that the Commission approved three requests to transfer parcel delivery products from the market-dominant side to the competitive side under the applicable statute. We submitted the same type of evidence in all four cases. The Commission approved the first three requests. So three out of four, that's pretty good, right? Not bad. But bear with me. There's more. By the third and fourth, without even mentioning the first three, the first three decisions. And in denying that request under those circumstances, the Commission, I think, violated two bedrock principles of administrative law. First, it departed from the evidentiary standard it followed before and from the findings it made in the three previous cases without even mentioning them, let alone trying to distinguish them or explaining why it was departing from them. That's one. And the second violation is that it failed to even acknowledge that there was a dissent, let alone engage in the arguments. Where does that become a bedrock principle of administrative law? I've never even heard of it. The dissent part? Yes, the argument that a majority in an agency must respond to the dissent. We have case after case after case that the majority must respond to the issues presented by the parties. But no case ever holding that they have to, as I recall, that you have to respond to a dissent. I think I have two cases to cite to you, Your Honor. Go ahead. Which one? The first one is the American Gas case, and that is 593F314. What did we – is that one of ours? That's one of yours, yes. What did we say? And what you said was – and I'm just pulling the – I don't have, like, the full case in front of me, but it said that the Commission must – and this is – I'm quoting this whole thing – must at a minimum acknowledge and consider – and there's ellipses – arguments raised by a dissenting Commissioner. I think we've qualified that to say something like non-frivolous or, you know, non – Indeed, right. As long as it – I think it – No, I don't understand that as a principle of administrative law. I must go back and look. If we've said it, it's true. Because you do have to – are you talking about an issue raised by the dissenting Commission that was not raised by the Petitioner? Well, I think – I think yes. I think if the dissent makes an argument that calls – A new argument that is not raised by Petitioner. I think it does as a matter of reasoned decision-making, sure. That if it's – if it's turning a new course or interpreting a statute differently than it did before. Well, I don't understand that as a matter of administrative law. We'll back and look at those cases. But I thought you were talking about situations where the dissent relied on some point that the Petitioner raised. Well, in the main – I am saying that, okay? The main argument I'm making is that they have three prior cases in which the dissent said, hey, these are factually indistinguishable. And the Commission not only didn't address the dissent's argument, it didn't address the underlying cases themselves. So in many ways, these two principles work together. You don't even have to breach the dissent. Okay. Fair enough. Fair enough, Your Honor. And by the way, there is a second case with the same proposition, which is the Chamber – the Chamber of Commerce v. SEC, which is 412 F. 3rd 133. And again, it was a – the Commission must address arguments presented by the dissent so long as they aren't out of bounds. And I think that goes, Judge Rodgers, to your point. And were those arguments presented by the party or presented anew by a dissent? Frankly, I don't recall if the Court in the – if this Court in those cases made a distinction. I think those went largely to sort of policy considerations that the dissent – if they're charting a new interpretive course, which I think you could read what – at least Mr. Whitaker's sort of contention of what the Commission did is doing, that you have to at least address arguments why you shouldn't. I mean, one of the arguments that the dissent, I think, made that we – that we didn't make, for example, was that in light of the fact that there were already three separate cases culminating in a finding that the whole market is – the whole market is competitive. Oh, but that – you didn't raise it because you didn't have any idea that that was going to be the position. Yeah, I think that's right. I'm not talking about new evidence. I'm talking about a new angle on an argument. Oh, okay. That's a fair point. But really, that's – that's your basic case, that the agency ignored the three prior cases when it decided. You don't need the dissent. No, that's true, Your Honor. But I think – I think it's probably – The dissent's just making the same point. I mean, it's probably making it a little more sharply, and in some – Maybe it's making it better than you are. Is that your point? Well, it could be. It could have worded it a little better. It could have worded it a little better. But it's – but you're right, that our principal argument is you can't distinguish or – or depart from earlier cases without at least acknowledging that you're doing it and addressing them. The – Especially when they're raised in dissent, something like that. Well, I – I mean, I think that's – I think it's very fair that in a 3-2 decision where the dissent is saying, hey, we have these cases, and these cases dictate this result, that at the very least, the majority should say, no, they don't. I mean, I – I just think that it makes the violation even – Just – just – Sure, it's just worded. Excuse me. If they had responded to the dissent of the case pretty much better, would you lose because they responded to it? I don't think – I – I don't think we would lose. No. But I would like to know the commission's reasoning. And then we would be discussing whether that reasoning holds water. Here, we have an absolute lack of reasoning, so it's a different kind of argument. This is a sort of basic failure of administration. Well, that's – I know. Mr. Silverman's worried about having to respond to dissents. That's exactly right. We do, as a court of appeals, we're very careful to respond to dissents. But agencies often do not. Sometimes we do, and sometimes we don't.  Well, actually, I – I hold the responsibility. All right. Yeah. If it's yours, I always respond. Have I ever been? I would – I would just like to, if I may, address one additional point, and that goes to an argument that my colleague made that, as I understand their – their argument, that they – the commission somehow didn't need to address these three prior parcel transfer cases because there was a recent case in the DBD round-trip mailer case, which you're on. I was very impressed with their reasoning. I was – I was – I was interested in their reasoning, and I – I mean, I think the answer is that if – I mean, I thought the round-trip mailer opinion of this court was really wonderful. I – well, I'm not going to stand here and disagree with you. Obviously, I can't. Actually – actually, our opinion had not come out by the time at the – what the agency was relying on, their round-trip mailer decision. Right. And in fact, their round-trip mailer decision didn't even come out until the comments were filed in the case. But I think the main point there is if – if – if that case were designed to turn out a new course, they should have said so then, which they didn't. They could have said so in the order under review, which they didn't, or they could have said it in any order since, which they haven't. So – So your main point, as I understand it, is clear, that in the first three cases, market competition was defined or found. It was found. It was found that – And – Oh, sorry. And so in the fourth case, it couldn't ignore that finding. That's correct. That it found – I mean, what we had was – Well, actually – See, I'm trying to distinguish between a situation – I'm thinking of cases that come to the court. Okay. You know, in the – in this sense, that the Postal Service asked for something. There was no opposition. You know, the Commission says, fine. The next time it comes in, the public representative has a concern, and the Commission says, we'll take care of that in the future. Third case, no opposition. Then we have this number 2306, new market, lots of opposition, you know, et cetera. We need a lot of analysis, et cetera. And the Commission says, well, you know, we've always followed the antitrust principles, Justice Department, et cetera. So now we come to your case, and the Commission says, well, we've got some opposition here. You know, it's just a different animal. And so I assumed, as maybe Judge Soberman's question suggested, that it's that finding about market competition that really is the problem here. I think for sure the finding that the entire parcel market is competitive is something that if the Commission is going to now say it's not necessarily, it has to explain – it just has to explain its reasoning. At the very least, it has to do that. As to the no opposition part, I just want to push back on the facts. On the very first of the parcel transfer cases, there was a strong amount of opposition to that by an actual user of that product. In 689? 689, that's right. Okay. And, in fact, the opposition in the case now on review was by – it was strong, no doubt, but it was by a company that, in fact, doesn't use the product. And they were mostly afraid that there was something that was going to be said that was going to be a problem for the round-trip mailer case. So the level of opposition – there was opposition in the first of the cases. But also it goes to not just the finding, and I think that is critical. There's a finding that the entire parcel delivery market is competitive. If it suddenly isn't, they have to explain why. But I think it also goes to the evidentiary standard that the commission imposed in prior cases. It doesn't mean it can't change its mind, but it does mean it has to explain why it's changing. I thought that was the gravamen of your argument, is that there was a new evidentiary standard imposed for the first case. I think it's both, Your Honor. I really do. I think it is a – in some ways they sort of flow together. I mean, there's the what type of evidence do you need. They definitely change that. There's what does that evidence need to show, and they change that too. Because I think rather than – I think the first three parcel transfer cases really stand for the proposition that whether there's one market or whether there are different components. Basically, Your Honor, that the first cases relied on common sense without great sophistication. Very low evidentiary burden, yeah. I would say it didn't have as high an evidentiary burden as you might see in other cases. In part, that – I mean, we don't know why they've changed their mind. I mean, I don't think – there's no, for example, explanation that we now understand the market better or that we understood it worse. I mean, I think it did rely in part on common sense. If anything we do is a competitive product, it has to be putting things in boxes and chipping them, because there is competition there. So I think it's both the evidentiary standard and the finding, the ultimate finding, that the parcel delivery market is competitive across the board. I have no further points to make. If the Court doesn't have any further questions, I'll reserve some time for rebuttal, if I may. Thank you. Counsel, I must say I think your position is very strong. Thank you. That's called framing the argument. You may not need to speak further. There you go, Your Honor. All right, here we go. May it please the Court, Henry Whitaker for the commission. You're from the Civil Division? Yes, Your Honor, for the commission. The commission in this case was reasonable in concluding that the Postal Service had failed to present sufficient evidence. I don't understand why the commission was not obliged to consider the three prior cases. Well, Your Honor, I think the first reason, I think, is because of the round-trip mailer. Oh, come on. God knows I know the round-trip mailer. And that is so much more difficult and an entirely different problem. Well, actually, I mean, the only way it's different, Your Honor, it's actually not really different. Are you kidding when you're talking about whether or not the real competition is caused by Netflix and the streaming level? It's got nothing to do with the direct mailing itself? Well, but if you'll recall in the round-trip mailer order, Your Honor, another significant question in that case was the extent to which the entertainment content on physical DVDs was a reasonable substitute for streaming services and red box kiosks. So, yes, there was the upstream-downstream distinction that Your Honor's opinion, I thought, quite ably pointed out. Thank you very much. But there was also the question of substitutability, which is, I think, central here. Yes, but that is an entirely different kind of case. It is enormously subtle and difficult. And these prior cases were not so subtle and difficult. And they were very similar to the case you had before. Well, but I think as in the round-trip mailer proceeding, there were a number of significant red flags. Which were? Which were, number one, the Postal Service in this case admitted that it was going to increase the price of this particular product and that that price increase would not result in a significant loss of business. That is pretty close to an outright admission that they have market power within the meeting of statute. Is that what the agency relied on? The agency absolutely relied on that point. And distinguished the prior three cases? Well, Your Honor, I have to concede that in the commission's analysis, it did not indeed mention the prior. Isn't black-letter administrative law that agencies have to treat like cases the same or else explain why they're changing their policy or why the cases are different? Well, Your Honor, this Court has held that the agency can indeed discharge that responsibility without citing the particular cases. It's true. You have to have some discussion, though. We've done this in the past. You don't have to cite the case. But we're going to change our view on this. Well, and I think that if you look at the considerations stressed by the commission's order, they are differences. They are factors that distinguish this case from the prior cases. But, Your Honor, I would point the Court to two cases that I think are very helpful for us on that score. One is Gilbert v. NLRB. We cite these in our brief, I think, at page 46. And the other is a case called Environmental Action v. FERC where the Court said you can distinguish cases by emphasizing considerations that were not previously relied upon. And I've talked about the price increase. That's a significant one. Two, this is really the... Counsel, I have to tell you, I find the government's position so weak in this case. Well, I hope to convince you otherwise, Your Honor. Seriously, as a former Deputy Attorney General, I wonder why the Justice Department did not just go back to the commission and say, let's remand and take another shot at this. Well, because I think this... That's why the Justice Department gets the authority to litigate for everybody. Your Honor, this is not unreasoned decision-making. The prior parcel transfer cases in no way reflect some all-encompassing determination that the entire parcel market is competitive. And indeed, the Postal Service's own submissions in those cases. Your brief is much more sophisticated than the commission's decision. Don't you agree? Well, I think, Your Honor, we certainly amplify on certain points that the commission made, but I think you can discern, certainly, the path of the agency's reasoning. And I was mentioning the prior parcel transfer cases. One thing that the Postal Service has not tried to do in any of the prior cases is ask the commission to lump together a retail product and a commercial product. And that is quite significant because in prior... For example, counsel relies on the parcel post work. In that order, contrary to counsel's contention, the commission did not find that the entire parcel market was competitive. Instead, it found that a segment of the retail ground market was the relevant market. Here, in contrast, the Postal Service's submission lumped in those two things together. And that is potentially significant. Indeed, the Postal Service itself admitted that single-piece mailers are in a different relevant market than bulk mailers. That's at JA-49. In other words, that it is, like, not true that the entire parcel market is competitive. I mean, what the Postal Service seems to think is that, well, the entire parcel market is competitive, so we can segment the market however we want. No, I mean, that's not how market definition works. If the entire parcel market is competitive, then you should just, like, treat that as the relevant market. And that is not what the commission has done in any of those prior parcel transfer cases. The third significant factor that sets this case apart, which the commission certainly relied on, is the vast below-cost price disparity between the product here and the allegedly reasonably equivalent substitutes. And they say they have at most 38.7% of a relevant market and possibly as little as, like, 7%. And if that's really true, and there really are reasonably equivalent substitutes for FedEx and UPS, it's hard to see why the supposedly reasonable substitutes are double and triple the cost. And that is absolutely something the commission relied on. And fourth, one reason why it's significant that this is the fourth parcel transfer case, as opposed to the first three, is now there are three other parcel products in the relevant market, including Parcel Select, which the Postal Service told us was 80% of the under one pound ground parcel market back in 2011. And yet, in their market definition figures, they did not even include that product in any relevant market. And the commission clearly admonished the Postal Service at footnote 33 that it needed to include all of those parcel products in the relevant market. So I think that it was certainly reasonable for the commission to apply the standard of the round-trip mailer when there were significant red flags with the Postal Service's own submission. And those flags, red flags, are made particularly apparent by the Postal Service's own price elasticity figures, which admittedly came out after the commission proceeded, which show that the demand for this product, the first class mail parcels product, is in fact inelastic, which is like the very definition of market power. And, Your Honor, the other thing I would mention is you've also made a harmless error argument, Your Honor. And even if you think that what Your Honor referred to as the very sophisticated showing, even if you thought it was error for the commission to fail to cite those prior transfer cases, I think that our showing, our substantial showing that they just simply cannot meet the statutory standard is certainly something the court can and should consider. We should consider your argument, even if it's not made by the commission? Absolutely. I think you can do that, because I think that goes to... No, no, that's violation of Chenery. Well, no, but I think that if there were a violation of Chenery, and I don't think there is a violation of Chenery, as I've tried to discuss... It would be a violation of Chenery if we relied on your reasoning and wasn't in the commission's decision. Well, no, I think that would go to whether there is an error. I don't think that would go to whether any error is harmless error, which instead, I think, goes to whether there is any reasonable prospect that any error, any failure... Where did you get this theory? Well, I get it from the Administrative Procedure Act, Your Honor, which puts the... I think that is just an assertion of administrative law that has never been recognized. Well, actually, it was recognized, Your Honor, by this Court's decision in Zavala in 2015, in which... That if a counsel raises an argument, not raised by an agency, we can take into account the counsel's argument. I certainly think you can, and what this Court held in Zavala, and certainly the Court has applied harmless error in a number of different administrative procedure cases. Yes, yes, yes, but not where you're coming up with a reasoning for an opinion which is different from what the... Let me just... I don't think it is different. I was just sort of making an even-if argument. Let me just emphasize. I mean, one of the points the Commission certainly made was that given the Postal Service's own assertion that it intended to jack up the price of this product 22% without... it didn't think it would lose a substantial amount of business, that's a J4849, that that made it incumbent on the Postal Service to provide an estimate of its demand, demand elasticity for this product. And that is also something that this Court mentioned in the round-trip mailer case as something that was potentially relevant. So that is absolutely something that the Commission relied on. And so I think that the... And by the way, that's made even more point about the fact we now have the elasticity figure, and it shows that they may well have market power over this product. But what this Court said in Zavala, and I think it's significant here, I mean, one way... Remember, we denied this request without prejudice. I mean, the Postal Service could tomorrow turn around and ask the Commission to reconsider this decision. And that was a very similar situation to what you had in Zavala, where the Court said that if you just have an APA procedural error and the party asserting the error can just go back and ask for reconsideration before... What was the procedural error in that case? Well, it was a listing decision about whether somebody was a foreign narcotics drug trafficker. It wasn't with respect to the reasoning of the case. It wasn't a gender type case. Well, I don't think that was necessarily the procedural error that was at issue, Your Honor. Fair enough. That's not a procedural error. Well... What's the procedural error here? Well, I think if there is a procedural error, and we don't think there is, it is at most a failure to cite and discuss the prior parcel transfer cases. I think the decision... The substance of the Commission... It seems to me, Counsel, the problem with your argument on this, Zavala, and correct me, I'm sure you'll correct me if you think I'm wrong, is that if you're allowed to go back and file again, you're saying file again, you know? If they're using the incorrect legal standard for how to determine whether the evidence is substantial or not, they're going to run into the same error again. Well, I don't understand the Postal Service to be contending we applied the incorrect legal standard. I mean, the Postal Service and the round-trip mailer case... Well, maybe I didn't phrase that... It's the issue of what evidence is required, the legal question, what sort of evidence is required. And you're going to run into that again. They're going to run into that again if they file again, right? Well, I guess, I mean... Their point is that the Commission is using the wrong legal judgment about what type of evidence is substantial. They're dead wrong about that. But, I mean, as I understand their argument, their argument is that it turns on a failure to cite and discuss the prior parcel transfer cases. But let me just talk about the legal standard here for a second, Your Honor, because I really think the legal standard the Commission should apply was articulated in the round-trip mailer case, which was supported by the Postal Service. They didn't contend in the round-trip mailer case that that was a departure in any way from the Commission's prior precedence. They could have done that on judicial review, Your Honor, and they... Well, that was absolutely a unique situation which the Postal Rate Commission had never seen before. It's actually not unique, Your Honor. The question is how to define the relevant market. Yes, this was an extraordinarily interesting question involving whether or not the market could include the content supplied downstream. Actually, Your Honor, no. I don't think it was a unique question. I thought it was pretty sophisticated. You think it was just simple, huh? The question was what the relevant... Hang on, I'm teasing. I mean, the question was what the relevant market was. Yes, well, that's always true. Well, I know, and that's my point, I guess, is that... Well, they looked in your prior cases on this. You thought the relevant market was obvious. Well, I don't... That's why it looked like it was just common sense. Gee, UPS and... What's the other one? UPS and... FedEx. FedEx. FedEx. FedEx. DHLs. So we know that was not, of course, the problem in the round-trip mailer. There was nobody in that market. Several points, Your Honor. That's not what the prior parcel cases say. Market definition is highly fact-specific. It depends on the arguments and evidence presented in each of the specific cases. The only difference between the round-trip mailer case and this case is that there may well be some direct competitors for this. That is not dispositive in any way of the market power question. It is often the case in antitrust cases that a firm has market power even when it has some competitors. That doesn't mean you can just, like, define the relevant market to be whatever product without, like, a rigorous examination of what products actually are reasonably bold substitutes. The conceptual question... It seems to me if we were to remand this case, you would be able to explain to the Postal Rate Commission what kind of sophisticated analysis they should have. Well, except we've already done that, Your Honor, in the order under review. We outlined in some detail the kinds of... Your brief is very impressive. Well, I think it's not just our brief, Your Honor. I mean, in the commission's order itself, we canvassed a variety of different considerations and ways the Postal Service could divide up the market, could support that with evidence, the kinds of things it should be thinking about. And so I think that absolutely is in the order, and the Court can absolutely and should affirm the order on that basis. Okay. Thank you. There are no further questions. Thank you. I hesitate to engage in a debate with Mr. Whitaker over the standard because I think this debate has to happen before the commission. Someone says, well, the commission's already told you. Pardon? Says the commission's already told you what you have to do. You mean the commission through Mr. Whitaker? No, the commission in its order. Oh, the commission in its order told us... I'm sorry? There are various ways to divide up the market. You can do it one way or the other, but you've got to... Well, you know, that's the problem. There really is a tension between... I mean, there's obviously a tension between the three prior orders, the three prior transfer orders. It wasn't like the commission decided on day one that, well, the entire parcel market... I mean, these were all products that dealt with different sort of components of the market. The first one was a lightweight commercial ground shipping product. The second was a single-piece commercial one- to three-day product. The third was a retail single-piece lightweight ground product. And then this one is a retail single-piece lightweight one- to three-day product. The point I'm making, and sorry for just running through that, was that the commission decided that whether it's one market or whether regardless of how you segment the market, there is a cross-the-board competition. That is the finding of the commission through these three cases. And I think I heard Mr. Whitaker say that the commission never found that the entire parcel market is competitive. It absolutely found that. That was the parcel post case, the third of those cases. That is a finding. And so I'm not sure... Well, I think he was talking about ground. Well, no, it wasn't ground. They said the entire parcel market is competitive. That was the finding. They didn't say, well, only bulk or anything. They said the entire market is competitive. As for the allegation that this case is unique, again, the commission's order didn't address any factual distinctions. But we were going to raise prices. I think we announced we were going to raise prices in two of the three prior cases. So the idea that this case was distinguishable on that ground is false. As for the price elasticity, something, again, the commission has never relied on, never suggested it needed. And also, really, price elasticity is of limited value when the entire premise of us wanting to transfer the product is that it's been artificially held down because of regulation. Like, of course, we think we can raise prices, our existing prices, preferably because we think they are artificially underpriced. But these are all the discussions we can have with the commission. I think it is clear to me that one thing the commission can't do is ‑‑ Neither UPS or the other competitor intervened in this case, did they? That is correct. That is correct. So they weren't objecting to what you were doing? I think it is fair to say that UPS and FedEx does not object to us raising our prices. Right. Because that actually helps their competitive position. I think that's fair to assume. But, yeah, they didn't intervene here. If the Court doesn't have any further questions, we ask that the case be remanded. Thank you. We will take the case under advisement.
judges: Rogers, Griffith, Silberman